IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:17-CR-5-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| SANJAY KUMAR, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on three motions made by defendant, seeking to exclude evidence at trial. (DE 115, 121, 163). The issues raised have been briefed fully, and in this posture are ripe for ruling.

## BACKGROUND

Indictment was returned in this case on January 12, 2017. On February 22, 2018, defendant was named in a 45 count, second-superseding indictment charging defendant with the following:

1) conspiracy to unlawfully dispense and distribute oxycodone, oxymorphone, hydromorphone, and alprazolam in violation of 21 U.S.C. § 846 (count 1);

2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count 2);

3) unlawful dispense and distribution of oxycodone in violation of 21 U.S.C. § 841(a)(1) (counts 3 through 23);

4) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c)(1)(A)(i) (count 24);

5) unlawful dispensation and distribution of alprazolam in violation of 21 U.S.C. § 841(a)(1) (counts 25 through 30);

6) engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 (counts 31 through

32);

7)    laundering of monetary instruments in violation of 18 U.S.C.§ 1956(a)(1)(B)(i), (ii) (counts 33 through 42); and

8)    attempt to evade and defeat tax in violation of 26 U.S.C. § 7201 (counts 43 through 45).

(DE 16; DE 86).

As relevant to the instant motions and as previously stated by the court, the government alleges that for more than ten years, defendant operated a purported pain management clinic in New Bern, North Carolina, called "New Bern Medicine and Sports Rehabilitation," and from approximately 2011 to 2016, defendant allegedly prescribed more than 1,000,000 pills containing Schedule II and Schedule IV controlled substances, receiving more than $1,000,000.00 in cash for those pills. See United States v. Kumar, No. 4:17-CR-5-FL-1, 2018 WL 3025946, at *2 (E.D.N.C. June 18, 2018).

Defendant filed his first motion in limine on April 8, 2018, seeking to exclude evidence of prior statements by non-testifying co-conspirators. (DE 115). Defendant then filed another motion in limine on April 12, 2018, seeking to exclude the following eight categories of evidence:

1)    Guns and ammunition found and located at defendant's residence;

2)    Money found and located at defendant's residence;

3)    Any materials found at defendant's residence which will be used to characterize defendant as a "prepper", or that he is in any way hostile to the federal government, including, but not limited to, any reference to the show "InfoWars" or Alex Jones, or any paraphernalia found relating thereto;

4)    The death of Amber Garris' child or any mention of that car wreck or civil litigation;

5)    Any depictions, photographs, press releases, medical records of any type, including Medical Examiner reports and/or testimony, relating to any deaths

of any individual from drug overdose, including their autopsy photographs;

6)      Defendant's "counter-surveillance" videos, personal research related to his "countersurveillance" activities, including but not limited to facebook searches, DMV searches, investigative materials, and notations of any kind whatsoever;

7)      Any reference whatsoever to allegations of "stalking" by defendant; and

8)      Any reference to "competency" of this defendant.

(DE 121 at 2-3).

The court granted the government's consent motion which sought, in part, to hold in abeyance decision on defendant's  motions in limine pending other case developments, which motion was allowed May 29, 2018.  On August 16, 2018, the court lifted stay and responses timely were filed by the government.

On September 3, 2018, defendant filed the additional, instant motion in limine, seeking to exclude five categories of evidence.  The first category of evidence is "any out of court statements made by any non-testifying witnesses," (DE 163 at 1), which is similar to that which defendant sought to exclude in his first motion in limine filed on April 8, 2018.  The next four categories of evidence defendant also previously sought to exclude in his April 12, 2018 motion in limine:

1)      [A]ny investigation of, existence of inquiry into, result of, or any other reference whatsoever of the existence of any deaths from any opioid or other controlled substance related complication giving rise thereto for which this defendant has not been charged by indictment . . . .

2)      [E]xistence of videotapes recorded by this defendant during the course of his pre-charge behavior in and around the New Bern, North Carolina area . . . .

3)      [A]ny conduct charged in any other forum by information, arrest or indictment for which this defendant has not been convicted . . . .

4)      [E]xistence of any weapons not otherwise alleged to be actually present at, employed within, resorted to, and /or otherwise alleged to be <u>in furtherance</u>

of the offense charged . . . . [including] any and all ammunition in proximity
to those weapons, and with specificity refers to all weapons seized at
defendant's home during a probable cause search pursuant to warrant.

(Id. at 2-5 (emphasis in original)).  The government filed response in opposition on September 11,

2018.  This case is set for trial beginning July 8, 2019.

## COURT'S DISCUSSION

    A.    Motions to Exclude Prior Statements of Non-Testifying Co-Conspirators (DE 115)
          and Out of Court Statements Made by any Non-Testifying Witnesses (DE 163)

Defendant seeks to exclude "any evidence of, or reference to, any such alleged prior

statements, or any other such statements by any alleged co-conspirator or [defacto co-defendant],

unless and until the declarant testifies under oath, subject to cross examination."  (DE 115 at 3

(alterations in original)).  In support, defendant cites to Bruton v. United States, 391 U.S. 123

(1968).

In Bruton, the Supreme Court "held that a defendant is deprived of his Sixth Amendment

right of confrontation when the facially incriminating confession of a nontestifying codefendant is

introduced at their joint trial, even if the jury is instructed to consider the confession only against

the codefendant."  Richardson v. Marsh, 481 U.S. 200, 207 (1987).  In Richardson, however, the

Court made clear that Bruton's rule was a narrow one, explaining that "the Confrontation Clause is

not violated by the admission of a nontestifying codefendant's confession with a proper limiting

instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but

any reference to his or her existence."  Id. at 211.

The Fourth Circuit has held that from this line of cases, statements that "obviously identify

the defendant, even without naming him, effect a constitutional violation that cannot be cured by

a jury instruction."  United States v. Lighty, 616 F.3d 321, 376 (4th Cir.2010).  By contrast,

4

"statements that incriminate by inference or only when linked with later evidence" do not violate the Sixth Amendment if accompanied by a proper limiting jury instruction. Id. at 376–77.

The government argues that because it is aware of the Bruton rule, it does not seek to introduce evidence that would violate this rule, and defendant has failed to identify any particular statement that he seeks to exclude, the court should deny defendant's motion. The government additionally argues that defendant misapprehends the reach of the Bruton rule, and the government reserves the right to introduce out of court statements made by co-conspirators that do not meet the definition of hearsay, are excluded from the definition of hearsay, or are exceptions from the hearsay rule. The government offers as an example statements "offered for the limited purpose of explaining why a government investigation is undertaken," where defendant in this case has indicated he will "persist in his unfounded claims that this investigations was illegitimate, unfounded, and tainted by bias."[1] (DE 161 at 12 (citing U.S. v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985) ("However, an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken."))). Finally, the government asks that defendant identify any particular out of court statement that concerns him prior to trial.

The government is correct that Bruton does not necessarily prevent offering out of court statements made by co-conspirators that do not meet the definition of hearsay, are excluded from the definition of hearsay, or are exceptions from the hearsay rule. See United States v. Holman, 27 F. App'x 210, 212 (4th Cir. 2001) ("The Supreme Court has recognized that Bruton is inapplicable where the statement is admissible pursuant to a 'firmly rooted hearsay exception.' Lilly v. Virginia,

---

[1] Defendant has stated belief that law enforcement and other members of the community including pharmacists instituted a campaign of "harassment" against him that was illegitimate and arose from personal animus. (See DE 118 at 21).

527 U.S. 116, 124, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). This Circuit has held that Federal Rule of Evidence 801(d)(2)(E) is such a firmly rooted hearsay exception.  See United States v. Shores, 33 F.3d 438, 442 (4th Cir.1994).").

Similarly, defendant seeks to exclude "Any out of court statement made by non-testifying witnesses." (DE 163 at 1).  This is a somewhat broader formulation than what defendant has sought above.  In support, defendant cites to United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) wherein the court held that

> The self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay . . . but the non-self-inculpatory statements [made by defendant] are inadmissible hearsay . . . .  If the district court were to have ruled in his favor, Ortega would have been able to place his exculpatory statements "before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids." . . . .Thus the district court did not abuse its discretion when it limited Ortega's ability to elicit his exculpatory hearsay statements on cross-examination.

Defendant additionally cites to United States v. Willis, 759 F.2d 1486, 1501 (11th Cir. 1985), wherein the court held that although the "appellants also take issue with the court's ruling that the defense could not elicit, through the cross-examination of Agent Anderson, Mahdi's allegedly exculpatory statements at the time of his arrest," the hearsay rule precisely forbids introduction of this evidence because "the defense sought to place Mahdi's remarks before the jury without subjecting Mahdi to cross-examination."

The government responds as follows:

> The Government has produced many law enforcement reports in this case, including reports from interviews of dozens of witnesses. The Defendant has had ample time to review those materials, but the Defendant has not identified any particular statement that he is seeking to exclude, and so the Government is unable to focus its analysis on any particular statement.

(DE 192 at 5).

The court directed defendant to file no later than November 13, 2018, supplementation identifying which statements defendant seeks to exclude regarding any alleged prior statements by any co-conspirators and any out of court statements made by non-testifying witnesses. Defendant failed to do so. For reasons stated above, defendant's motions with regard to these categories of evidence are denied.

B.    Motions Seeking to Exclude Other Evidence (DE 121, 163)

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed.R.Evid. 401. The "basic standard of relevance . . . is a liberal one." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 587 (1993). Irrelevant evidence is not admissible. Fed.R.Evid. 402.

Under Rule 403, the court may exclude otherwise relevant evidence if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. "Because the evidence sought to be excluded under Rule 403 is concededly probative, the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir.1996).

Rule 404(b) states that evidence of "other crimes, wrongs, or acts is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id.

Generally, Rule 404(b) is an "inclusive rule" which "admits all evidence of other crimes (or acts) relevant to an issue in a trial except that which tends to prove only criminal disposition." United States v. Masters, 622 F.2d 83, 85 (4th Cir.1980). Evidence regarding prior acts is admissible when:

> (1) the prior act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must not be substantially outweighed by its prejudicial nature.

United States v. Queen, 132 F.3d 991, 995 (4th Cir.1997).

In accordance with these rules, the court considers in turn below the categories of evidence defendant seeks to exclude.

1.      "Guns and ammunition found and located at defendant's residence"

Defendant seeks to exclude a large cache of guns and ammunition found and located at defendant's residence pursuant to federal search warrants.[2]  (See DE 121 at 2; DE 163 at 5).  The government alleges that in defendant's residence, agents "seized four prescription pill bottles–without labels–containing approximately 165 suspected Schedule II pills"; "36 firearms and tens of thousands of rounds of ammunition for those weapons," ranging from "handguns to large-capacity semi-automatic rifles"; as well as large amounts of cash which "were stuffed into large PVC pipes, and the pipes were sealed and taped" and placed "inside duffel bags," totaling more than $400,000.00.  (DE 161 at 6-7).

---

[2]  Defendant previously moved to suppress the firearm and ammunition as fruits of an unconstitutional search, (DE 120), but, following briefing, orally moved before United States Magistrate Judge Robert T. Numbers II to withdraw the motion, (DE 136).  Magistrate Judge Numbers recommended, which this court adopted, the motion to suppress be denied as moot.  (See DE 137 ("And based upon Defense counsel's representation that Kumar is not pursuing a claim of a violation of [] Fourth Amendment at this time, I recommend that the district court deny the Motion to Suppress (D.E. 120) as moot"); DE 142 ("Upon careful review of the M&R and the record in this case, the court ADOPTS the findings and recommendations of the magistrate judge and DENIES defendant's motion.")).

The firearms and ammunition are admissible pursuant to Rule 401, and Rule 404(b) is not implicated.  See United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996) ("We find that there was no plain error as to Rule 404(b) because Rule 404(b)'s exclusion of bad acts does not pertain to the contested testimony . . . .  where testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible").

Defendant has been charged with conspiring to unlawfully distribute illegal substances from in or about 2011 to June 21, 2016 (count 1); possession of a firearm in furtherance of a drug trafficking crime on or about June 21, 2016, (count 2), the day the search warrants were executed and the weapons cache was found; and possession of a firearm in furtherance of a drug trafficking crime on or about February 12, 2014 (count 24).  The  seized firearms and ammunition are not "irrelevant" or "propensity evidence," as argued by defendant, (DE 121 at 3), but are directly relevant to whether defendant possessed a firearm in furtherance of a drug trafficking crime on the dates alleged.  See United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) ("Moreover, there are many factors that might lead a fact finder to conclude that a connection existed between a defendant's possession of a firearm and his drug trafficking activity.  Some of these factors may include, but are not limited to: the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.") (citations omitted); see also United States v. Ward, 171 F.3d 188, 195 (4th Cir. 1999) ("This court has held that the admission of handguns into evidence in drug cases has been consistently upheld as relevant to the issues raised by such cases . . . .  Guns are tools of the drug trade and are commonly recognized articles of drug paraphernalia.")

(citations omitted); <u>United States v. Ricks</u>, 882 F.2d 885 (4th Cir.1989) ("We have previously ruled that evidence of firearms is relevant in narcotics conspiracy cases.").

Accordingly, the court denies defendant's motions in limine as to this category of evidence.

2.      "Money found and located at defendant's residence"

Defendant seeks to exclude hundreds of thousands of dollars found at defendant's residence, wrapped in plastic and stuffed into sealed PVC pipes. (<u>See</u> DE 121 at 3).

Similar to the above regarding the guns and ammunition, the currency is directly relevant evidence.   The currency allegedly represents the proceeds of defendant's illegal business; its proximity to firearms is relevant to whether the firearms were possessed in furtherance of a drug crime under <u>Lomax</u>; it corroborates witnesses statements that defendant operated a cash-only pill distribution operation for several years; it provides evidentiary support for the charges alleging that defendant intentionally concealed and laundered his currency; and it is relevant to the charges that the defendant filed false tax returns in an attempt to evade income tax.  (DE 161 at 16-17).

Accordingly, the court denies defendant's motion in limine as to this category of evidence.

3.      "Any depictions, photographs, press releases, medical records of any type, including Medical Examiner reports and/or testimony, relating to any deaths of any individual from drug overdose, including their autopsy photographs"

In both of defendant's motions in limine, defendant seeks to exclude reference to individuals who have overdosed from drugs. (<u>See</u> DE 121 at 3; DE 163 at 2 (seeking to exclude "any investigation of, existence of inquiry into, result of, or any other reference whatsoever of the existence of any deaths from any opioid or other controlled substance related complication giving rise thereto for which this defendant has not been charged in the indictment.")).

The government has clarified to the court that it "plans to present evidence regarding a single

patient death: Edwin Desmond." (DE 192 at 6; see also DE 161 at 20). The government argues first that this evidence is intrinsic to the conspiracy charged in count 1 and is therefore not governed by Rule 404(b). (DE 161 at 20). The government asserts this evidence is not evidence of "prior bad acts," but directly relevant evidence of defendant's failure to operate a lawful practice within the required standard of medical care and evidence of intent, because following this death, defendant "refused to correct his practice." (Id.). The government additionally argues that at the least, this death is evidence of defendant's willful blindness, citing to Fourth Circuit precedent indicating the government is permitted to introduce circumstantial evidence regarding intent or willful blindness. See United States v. Tucker, 376 F.3d 236, 238 (4th Cir. 2004) ("Knowledge and participation in the conspiracy may be proven by circumstantial evidence"); United States v. Zayyad, 741 F.3d 452, 462-63 (4th Cir. 2014) ("The Government's circumstantial fact evidence allowed the jury to reasonably infer that the pills were counterfeit . . . . At the very least, a jury could have reasonably concluded that Zayyad willfully blinded himself to the reality that the pills were counterfeit.").

Additionally, the government cites to a recent Tenth Circuit opinion, wherein defendant was convicted of unlawful drug distribution and money laundering arising from prescribing opioids outside the usual course of medical practice when operating a pain-management clinic. The court held evidence regarding patients who died while under defendant's clinic's care was admissible in that admission of this evidence was "not plainly erroneous" under Rule 404(b) and not beyond the district court's discretion under Rule 403:

> Rule 404(b) does not preclude the admission of other-act testimony when the other act is intrinsic to the charged offense . . . . We have sometimes referred to this principle as res gestae—evidence that is "part and parcel of the proof of the offense charged in the indictment." . . . . In this case, the testimony regarding the deceased patients was inextricably connected to the charged offenses because it was offered to help prove that prescriptions written to those patients were unlawful and not

consistent with accepted medical norms.  Thus the Rule 404(b) argument fails.

Schwartz's Rule 403 argument, although not waived or forfeited, shares a similar fate.  Evidence of patient deaths was probative of the conspirators' wanton disregard for the drug-abusive tendencies of its patients.  It showed that Schwartz knew that the clinic's patients were misusing their prescriptions, yet the practice continued to prescribe opioids in irresponsible ways.  Furthermore, it is not unfairly prejudicial for the jury to know the consequences of a defendant's criminal behavior, especially when the district court gave a limiting instruction before and after trial, thereby alleviating any prejudicial effect.  We thus cannot say that the district court went beyond its wide range of discretion in admitting this evidence.

United States v. Schwartz, 702 F. App'x 748, 755–56 (10th Cir. 2017).

Similarly, the Eleventh Circuit has held that at trial of a physician charged with health care fraud, unlawfully dispensing controlled substances, and dispensing controlled substance resulting in death, admission of evidence related to uncharged patient deaths did not violate the Federal Rules of Evidence.  United States v. Bourlier, 518 F. App'x 848 (11th Cir. 2013).  The court determined as follows:

The district court did not abuse its discretion by determining that the evidence of the uncharged deaths was not 404(b) evidence because it was "inextricably intertwined with the offenses charged." Again, the evidence of death was admitted about patients whose care was the subject of the unlawful prescribing counts. These patients were receiving controlled substance prescriptions from Robert and died during the time period alleged in these counts of the indictment . . . .

The district court did not abuse its discretion by finding this evidence to be relevant. For example, evidence that Hassell, Amaker, and McCormick had died, foreclosed any idea that the patients stopped receiving prescriptions from Robert because Robert had stopped treating them. Similarly, evidence of these patients' deaths would have put to rest any idea that they were not called by the government to testify at trial because they only had good things to say about Robert. Finally, the evidence of these patients' deaths could be considered by the jury when determining whether Robert knew that his patients were misusing his prescriptions. As we have said, this is one factor that may suggest that Robert distributed controlled substances without a legitimate medical purpose and outside the usual course of professional practice . . . .

The district court did not abuse its discretion by finding that any unfair prejudice did

not substantially outweigh the probative value of this evidence . . . .  We recognize that the evidence of these patient deaths was highly probative. At the same time, we acknowledge that it was prejudicial as well. Our concerns about the prejudice are mitigated, however, by the three jury instructions the district court gave to the jury . . . , as well as the undisputed testimony that other factors besides the drugs prescribed by Robert contributed to each death. . . .

Id. at 855-56; see also United States v. Lang, 717 F. App'x 523, 539 (6th Cir. 2017) ("Thus, good-faith questions about whether Patterson knew that her patient had died from an overdose soon after she prescribed a large dose of oxycodone to that patient were admissible to impeach Patterson's claim that her patients were legitimate.").

As the above case law indicates, although the Fourth Circuit has not addressed this issue, the Tenth and Eleventh Circuits have held relevant and admissible uncharged deaths from overdose in cases charging defendants with unlawful dispensing of controlled substances.  Likewise, the Sixth Circuit has allowed such evidence for impeachment purposes where the defendant testified her patients were legitimate.[3]

In this circuit, in United States v. Kostenko, No. 5:16-CR-00221, 2017 WL 1395500, at *2 (S.D.W. Va. Apr. 17, 2017), the court found evidence of patients' deaths "potentially relevant to the requirement that the jury find that the distribution was 'not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice,'" and that

---

[3] In the Ninth Circuit, the court held the district court erred in admitting evidence of uncharged deaths in a similar case as the instant case.  However, in that case the government introduced evidence of an uncharged patient's death where the patient died of cancer, not drug abuse, and introduced the evidence of the patient's death in a way in which the court found to be of extremely limited probative value.  Notwithstanding, the Ninth Circuit found any error harmless.  See United States v. Diaz, 717 F. App'x 684, 687–88 (9th Cir. 2017) ("Diaz contends that the district court erred by allowing the government to introduce evidence of uncharged patient deaths. The use of such evidence here is troubling, especially because the cause of one of the deaths was, as the government concedes, cancer, not drug abuse. Moreover, although some of the patient deaths could have been relevant to prove intent, knowledge, and absence of mistakes . . . testimony—accompanied by photographs—of the people whose lives were ruined, allegedly by the easy access to drugs facilitated by Diaz, was of 'extremely limited' probative value . . . . But given the voluminous evidence arrayed against Diaz, any error was harmless . . . .").

such evidence could be used to "rebut a 'good faith' defense and to show knowledge that the prescriptions were outside the standards of medical practice." The court concluded in that case, however, that where the government had charged defendant with causing the death of certain patients, evidence of other, uncharged overdosed deaths "has the potential to be both unfairly prejudicial and confusing to the jury." Id. (citing United States v. Tran Trong Cuong, 18 F.3d 1132, 1141 (4th Cir. 1994) ("[I]t concerns us that, as to these 80 counts, defendant may have been found guilty of some counts by association-the association of the counts properly proved with those that were not")). Thus, the court held that "the potential for unfair prejudice and confusion substantially outweighs the probative value of the uncharged patient deaths, and, therefore, the motion in limine to exclude evidence of uncharged patient deaths should be granted." Id.

Here, the court is confronted with a situation that appears more similar to that as found in the Tenth and Eleventh Circuits, and perhaps the Sixth, but not the Ninth or in Kostenko. The government has asserted that the death of defendant's patient was from "apparent oxycodone toxicity," (DE 161 at 5), not another cause as was the concern in Diaz, and there are no charged deaths to be confused with uncharged deaths, as found in Kostenko. Diaz's finding, however, could be implicated in this case, in that the government could introduce evidence of defendant's patient's death in such a way that the probative value would be overcome by the prejudicial effect.

At this time, the court defers ruling on the admissibility of this category of evidence. Much depends on the way in which the government seeks to introduce this evidence, and the court will determine at that time admissibility. The court is inclined to admit the evidence, however, if the government can introduce it in a manner that is not overly prejudicial as set forth in Diaz, absent defendant providing controlling Fourth Circuit authority to the contrary or convincing argument as

to why <u>Schwartz</u> and <u>Bourlier</u> should not control the outcome.[4]

4.      "The death of Amber Garris' child or any mention of that car wreck or civil litigation"

Defendant seeks to exclude reference to Alanna Garris and circumstances arising from that death.  (<u>See</u> DE 121 at 3).  Six-year-old Alanna Garris died on February 22, 2013, within the time frame alleged in the conspiracy count (count 1).  Garris's mother, who was defendant's patient at the time and who was found to have oxycodone in her system at the time of the car wreck, has pleaded guilty to felony death by motor vehicle.  In 2015, the government states that defendant was found liable by a civil jury for Alanna Garris's death due to his negligent prescriptions of pain medication to Amber Garris, although defendant asserts instead that 1) DSS had intervened a year prior to the accident, 2) Garris' children were taken from her, 3) "Dr. Kumar, on report from Amber's brother that she was abusing medication, called the whole family in, and refused to give Amber her medications, but instead gave them to Marie and her husband," who in turn improperly gave Amber the entire bottle, 4) on the day of the accident, Garris was incorrectly allowed to leave her home with her child, and 5) the jury awarded only nominal damages and held DSS responsible. (<u>See</u> DE 193 at 2). The government adds that "[d]espite the car wreck and despite the civil verdict against him, the Defendant continued prescribing pills outside the course of a legitimate medical practice." (DE 161 at 18).

---

[4] The government also asserts that because defendant is not charged with distribution of controlled substances causing death, a limiting instruction like the one used in <u>Schwartz</u> would be appropriate. <u>Schwartz</u>, 702 F. App'x at 764 n.4 (the limiting instruction provided: "You may consider evidence of these deaths in your determination of whether the Government has proven the existence of a conspiracy to distribute controlled substances beyond the scope of professional practice and for a purpose other than a legitimate medical purpose beyond a reasonable doubt. You may not consider whether the deaths of [these patients] were caused by the ingestion of controlled substances.").  The court will additionally decide if such a limiting instruction is appropriate after the parties submit proposed jury instructions and the court rules on admissibility of the patient's death.

The government offers the same support for admission of this evidence as for the admission of evidence regarding the death of defendant's patient, citing to <u>Tucker</u> and <u>Zayyad</u> for the proposition that a jury may infer knowledge and intent from circumstantial evidence in conspiracy cases and rely on a theory of willful blindness to establish intent. (DE 161 at 18 (citing <u>U.S. v. Garnes</u>, 587 Fed. Appx. 60, 62 (2014) (holding same)). The government also again cites to <u>Schwartz</u> for the proposition that "a death associated with a patient is relevant circumstantial evidence of the defendant's knowledge and intent and is not unfairly prejudicial." (<u>Id.</u> at 18-19 (citing <u>Schwartz</u>, 702 F. App'x at 756)).

However, this category of evidence is unlike the above category of evidence concerning the deaths of defendant's patient, and <u>Schwartz</u> does not support the government's position. Here, it appears the government seeks to introduce evidence concerning 1) the death of a patient's child, not the death of a patient, 2) presumably the plea of the patient as to felony death by motor vehicle, and 3) the result of civil litigation finding defendant liable for negligently writing prescriptions for pain medication, all, it appears, in support of defendant's knowledge and intent. (<u>See also</u> DE 192 at 7 ("The Government believes that this civil judgment against the Defendant represents clear evidence of the Defendant's intent and state of mind.")).

The evidence sought to be introduced by the government is arguably relevant as to intent and knowledge, in that the prior events and ensuing litigation concerns similar issues to the case at hand, the prescribing or over-prescribing of oxycodone, and for the same reason are probative of certain elements of the crime charged, such as defendant's intent. <u>See</u> <u>United States v. Hodge</u>, 354 F.3d 305, 312 (4th Cir. 2004) ("We conclude, however, that the evidence of Hodge's 1996 drug transactions was relevant and necessary in that it tended to show the existence of a continuing

narcotics business and therefore to show Hodge's knowledge of the drug trade and his intent to distribute the cocaine found in his Jeep."); United States v. Sanchez, 118 F.3d 192, 196 (4th Cir.1997) (holding that a not-guilty plea places defendant's intent at issue, and evidence of similar prior crimes can thus be relevant to prove intent to commit charged crime). However, even assuming relevance, such evidence may be excluded when its probative value is substantially outweighed by the potential for "unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403.

Here, the danger of unfair prejudice substantially outweighs what limited probative value this evidence could provide. First, given defendant was found liable, even if only nominal damages were awarded, it is likely that the jury will place undue weight on such evidence as defendant's liability was found in prior judicial proceedings. See Carter v. Burch, 34 F.3d 257, 265 (4th Cir. 1994) (concluding that a judge's findings in a different proceeding should be excluded under Rule 403 because it is likely a jury would "place[ ] undue weight on such evidence"); Herrick v. Garvey, 298 F.3d 1184, 1192 (10th Cir.2002) (noting the admission of prior judgments or findings of fact under Rule 803(8) is questionable because "[j]uries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped on them by the judicial system"). Additionally, introduction of this evidence seems likely to protract trial by raising collateral issues regarding what occurred during the civil trial, what the jury in that trial found, and the applicability of a finding of civil liability as to the criminal issue of intent and knowledge. See In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig., 810 F.3d 913, 922 (4th Cir. 2016) (finding that subjecting the jury to days of complex testimony on a question not central to the action as misleading); Yates v. Ford Motor Co., No. 5:12-CV-752-FL, 2015 WL 2189774, at *16

(E.D.N.C. May 11, 2015) ("introduction of this evidence seems likely to protract trial by raising collateral issues . . . ."). This consumption of time is not justified in light of other evidence available to the government and the limited probative value of this evidence. Finally, the court's holding is further buttressed by the extremely emotional nature of the evidence the government seeks to introduce, the death of a child in a car wreck where the child's mother was driving and allegedly at fault. See United States v. Powers, 59 F.3d 1460, 1467 (4th Cir.1995) (holding that prejudice is shown where court believes the evidence will unduly excite the emotions of the jury and thereby cause it to act irrationally).

Accordingly, the court grants defendant's motions as to this category of evidence, noting this evidence is inadmissible unless defendant opens the door to the introduction of this evidence at trial.

5. "Defendant's 'counter-surveillance' videos, personal research related to his "countersurveillance" activities, including but not limited to facebook searches, DMV searches, investigative materials, and notations of any kind whatsoever"

In both of defendant's motions in limine, defendant seeks to exclude evidence regarding defendant's alleged efforts to conceal his activities prior to arrest. (See DE 121 at 3; DE 163 at 3-4 (seeking to exclude "any reference, direct or indirect, to the existence of videotapes recorded by this defendant during the course of his pre-charge behavior in and around the New Bern, North Carolina area.")). The government argues in response that defendant's "aggressive countersurveillance efforts, including his employment of patients, a private investigator, and others to aid in his countersurveillance, is intrinsic, directly relevant evidence of the Defendant's own intent," and that under United States v. Burgos, 94 F.3d 849 (4th Cir. 1996), it is also evidence of the conspiracy

charged in count 1, and therefore should be admitted under Rules 401 and 403. (DE 161 at 22).[5]

The Fourth Circuit has found in a drug conspiracy case that evidence of countersurveillance is directly relevant evidence. It is both evidence that a person is a participant in the conspiracy and "circumstantial evidence tending to establish the existence of a conspiracy." Burgos, 94 F.3d at 872. "Countersurveillance provides a conspiracy with an essential service in ensuring that the conspiracy is cloaked and executed in a manner to avoid exposure." Id. For that reason, the Fourth Circuit noted, with approval, that in the Seventh Circuit, "countersurveillance standing alone is sufficient to convict a defendant of conspiracy to possess with intent to distribute drugs." Id. (citing United States v. Pazos, 993 F.2d 136, 137 (7th Cir. 1993)); see also United States v. Rubio-Garcia, 636 F. App'x 717, 719 (9th Cir. 2016) ("Sufficient evidence supports Rubio's conspiracy conviction as well. . . . The evidence also showed that the vehicle Rubio was directing drove in a pattern consistent with counter-surveillance activities, which 'qualify as acts in furtherance of a conspiracy.'") (citing United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987)).

Here, defendant's countersurveillance activities, including videotapes made by defendant, are admissible under Rules 401 and 403. Accordingly, the court denies defendant's motions in limine as to this category of evidence.

  6.  Remaining categories of evidence

Defendant additionally seeks to exclude the following categories of evidence, which the government does not oppose:

  •  "Any materials found at defendant's residence which will be used to characterize defendant as a 'prepper', or that he is in any way hostile to the

---

[5] In defendant's second motion in limine, defendant asserts for the first time that the videos at issue would be irrelevant if introduced by the government but relevant if introduced by defendant. (See DE 163 at 4). However, defendant does not offer the court any further explanation or support as to this assertion.

federal government, including, but not limited to, any reference to the show 'InfoWars' or Alex Jones, or any paraphernalia found relating thereto"

• "Any reference whatsoever to allegations of 'stalking' by defendant"

• "Any reference to 'competency' of this defendant"

• "any conduct charged in any other forum by information, arrest or indictment for which this defendant has not been convicted"

(DE 121 at 3; DE 163 at 4; <u>see also</u> DE 161 at 14 ("The Government agrees that certain evidence mentioned by Defendant – specifically, references to the Defendant's competency, his political views, and his pending stalking charges–should be excluded under Fed. R. Evid. 401 &403"); <u>id.</u> at 9).

The court grants defendant's motion in limine as to the above categories of evidence, noting this evidence is inadmissible unless defendant opens the door to the introduction of such evidence at trial.

## CONCLUSION

Based on the foregoing, the court denies defendant's motion in limine seeking to exclude evidence of prior statements by non-testifying co-conspirators. (DE 115). It grants in part, denies in part, and holds in abeyance in part defendant's remaining motions in limine herein considered. (DE 121, DE 163).

SO ORDERED, this the 28th day of January, 2019.

LOUISE W. FLANAGAN
United States District Judge