| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| SANJAY KUMAR, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the government's motions in limine seeking to exclude testimony from defendant's expert witnesses. (DE 233, DE 234). The issues raised have been briefed fully, and in this posture are ripe for ruling. For reasons set forth below, the government's motions are granted.

## BACKGROUND

Indictment was returned in this case on January 12, 2017. On February 22, 2018, defendant was named in a 45 count, second-superseding indictment charging defendant with the following:

1)   conspiracy to unlawfully dispense and distribute oxycodone, oxymorphone, hydromorphone, and alprazolam in violation of 21 U.S.C. § 846 (count 1);

2)   possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count 2);

3)   unlawful dispense and distribution of oxycodone in violation of 21 U.S.C. § 841(a)(1) (counts 3 through 23);

4)   possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c)(1)(A)(i) (count 24);

5)   unlawful dispensation and distribution of alprazolam in violation of 21 U.S.C. § 841(a)(1) (counts 25 through 30);

6) engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 (counts 31 through 32);

7) laundering of monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (ii) (counts 33 through 42); and

8) attempt to evade and defeat tax in violation of 26 U.S.C. § 7201 (counts 43 through 45).

(DE 16; DE 86).

As previously stated by the court, the government alleges that for more than ten years, defendant operated a purported pain management clinic in New Bern, North Carolina, called "New Bern Medicine and Sports Rehabilitation," and from approximately 2011 to 2016, defendant allegedly prescribed more than 1,000,000 pills containing Schedule II and Schedule IV controlled substances, receiving more than $1,000,000.00 in cash for those pills.[1] This case is currently set for jury trial to commence on July 8, 2019.[2]

On September 14, 2018, defendant filed notice identifying eight individuals as potential defense experts including Dr. James Hilkey ("Hilkey") and Dr. Wilkie Andrew Wilson, Jr. ("Wilson"). (DE 216). Of these eight, only Hilkey and Wilson were identified as retained experts, with the remaining individuals listed as both fact and expert witnesses.

Regarding Hilkey and Wilson, defendant noticed the following:

Dr. James Hilkey - Dr. Hilkey is a Licensed Practicing Psychologist whom the defendant intends to call in his case-in-chief to provide expert testimony pursuant to Fed. R. Evid. 702, 703, 705. Dr. Hilkey is expected to testify regarding the

---

[1] The court has addressed other pretrial motions made by the parties in previous orders. See, e.g., United States v. Kumar, No. 4:17-CR-00005-FL, 2017 WL 3412140, at *1 (E.D.N.C. Aug. 8, 2017); United States v. Kumar, No. 4:17-CR-5-FL-1, 2018 WL 3025946, at *1 (E.D.N.C. June 18, 2018); United States v. Kumar, No. 4:17-CR-5-FL-1, 2019 WL 346395, at *1 (E.D.N.C. Jan. 28, 2019).

[2] Trial, originally set for October 1, 2018, was continued due to the severe weather event known as "Hurricane Florence," which adversely impacted New Bern, North Carolina and surrounding areas.

psychological profile of the defendant and how his psychological profile and functioning drove certain behaviors of this defendant, as provided in the Report of Psychological Forensic Evaluation. This testimony is expected to provide response to anticipated characterizations by the Government witnesses. . . .

Dr. Wilkie Andrew Wilson, Jr. - Dr. Wilson is a Physiologist and Biomedical Engineer whom the defendant intends to call in his case-in-chief to provide expert opinion testimony pursuant to Fed. R. Evid. 702, 703, 705. Dr. Wilson will be qualified as an expert in the field of Neurophysiology. . . .

(Id. at 1).

On September 16, 2018, the government filed motion in limine, seeking to exclude seven of the eight proposed expert witnesses and notifying the court of the government's intention to address notice of the remaining proposed expert, Hilkey, under separate motion. On September 19, 2018, the court granted defendant's motion to extend the deadline to supplement his expert disclosures.[3]

On January 28, 2019, the court denied the government's September 16, 2018, motion in limine, stating that the "court anticipates that many of the issues regarding defendant's expert witnesses may have been resolved in the intervening period since the government filed its instant motion," and thereby denying the motion without prejudice to its renewal within 21 days, to "enable the court, if needed, to consider a more narrowly-tailored motion raising up for decision any remaining issues concerning defendant's expert witnesses."

As relevant here, by different order on the same day, the court also denied defendant's motions in limine to the extent defendant sought to exclude the following evidence: 1) "guns and ammunition found and located at defendant's residence"; 2) "money found and located at defendant's residence," including "hundreds of thousands of dollars found at defendant's residence, wrapped in plastic and stuffed into sealed PVC pipes"; and 3) "defendant's 'counter-surveillance'

---

[3] The government has represented to the court that no further disclosures were provided by defendant. (DE 234 at 4).

videos, personal research related to his 'countersurveillance' activities, including but not limited to facebook searches, DMV searches, investigative materials, and notations of any kind whatsoever." (See DE 228 at 8-19).[4]

On February 14 and 19, 2019, the government filed the instant motions in limine. The first seeks an order excluding the proposed testimony of Hilkey as prohibited by the Insanity Defense Reform Act of 1984 ("IDRA") and Federal Rules of Evidence 401, 403, and 702. (DE 233 at 1).[5] The second renews the government's original motion in limine, filed September 16, 2018, seeking to exclude testimony of the remaining seven proposed expert witnesses. (DE 234 at 1).

Defendant filed opposition to both motions on February 25 and 28, 2019, respectively, informing the court that five of the proposed expert witness will be called as fact witnesses and will offer no separate expert opinion and one proposed expert witness is now deceased. Thus, in addition to Hilkey, "the only witness remaining from the defendant's Notice of Expert testimony subject of the Government's motion is Dr. Wilkie Wilson." (DE 236 at 4).

**COURT'S DISCUSSION**

A.    Standard of Review

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed.R.Evid. 401. The "basic standard of relevance . . . is a liberal one." Daubert v. Merrell Dow

---

[4] The court granted defendant's motions in limine to the extent he sought to exclude "materials found at defendant's residence which will be used to characterize defendant as a 'prepper', or that he is in any way hostile to the federal government, including, but not limited to, any reference to the show 'InfoWars' or Alex Jones, or any paraphernalia found relating thereto." (DE 228 at 19-20; see also DE 161 at 14 ("The Government agrees that certain evidence mentioned by Defendant – specifically, references to the Defendant's competency, his political views, and his pending stalking charges–should be excluded under Fed. R. Evid. 401 &403")).

[5] In addition or in the alternative, the government seeks "an order striking [Hilkey's] notice pursuant to Federal Rule of Evidence 12.2(d) insofar as it relates to a mental condition bearing on the issue of the [d]efendant's guilt and was therefore required to be filed on or before April 13, 2018 (i.e., the pretrial motions deadline)." (DE 233 at 1).

Pharm., Inc., 509 U.S. 579, 587 (1993).  Irrelevant evidence is not admissible.  Fed.R.Evid. 402.

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony. Under Rule 702, expert testimony is appropriate when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness qualified as an expert may be permitted to testify where "(b) the testimony is based upon sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case." Id.

Federal Rule of Evidence 702 imposes a "basic gatekeeping obligation" upon a trial judge to "ensure that any and all scientific testimony is not only relevant, but reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert, 509 U.S. at 592–93.  "The proponent of the testimony must establish its admissibility by a preponderance of proof." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

"[R]elevance – or what has been called 'fit' – is a precondition for the admissibility of expert testimony, in that the rules of evidence require expert opinions to assist the 'the trier of fact to understand the evidence or to determine a fact in issue.'" United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 318 (4th Cir. 2018) (quoting Daubert, 509 U.S. at 597). The court must determine whether the expert's "reasoning or methodology properly can be applied to the facts in issue." Cooper, 259 F.3d at 199 (quoting Daubert, 509 U.S. at 592–93).

The reliability inquiry is a "flexible one focusing on the principles and methodology employed by the expert, not on the conclusions reached." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (internal quotations omitted). In assessing whether expert testimony is "reliable," the court may consider:

> (1)whether a theory or technique can be (and has been) tested; (2) whether the theory
> has been subjected to peer review and publication; (3) the known or potential rate of
> error; (4) the existence and maintenance of standards controlling the techniques'
> operation; and (5) whether the technique has received general acceptance within the
> relevant scientific or expert community.

United State v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003) (internal quotations omitted). These factors are "neither definitive, nor exhaustive," and "particular factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [her] testimony." Cooper, 259 F.3d at 199–200. "[T]he court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful[,] . . . depend[ing] upon the unique circumstances of the expert testimony involved." Westberry, 178 F.3d at 261.

Even if the expert testimony is otherwise admissible, it may still be excluded pursuant to Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. United States v. Dorsey, 45 F.3d 809, 813 (4th Cir. 1995) ("Expert evidence can be both powerful and quite misleading because of the difficulty of evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses.") (quoting Daubert, 509 U.S. at 595).

Under Federal Rule of Criminal Procedure 16(b)(1)(C), defendant must provide "a written summary of any [expert] testimony that the defendant intends to use" at trial. The summary must describe "the [expert] witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id. Failure to comply with Rule 16(b)(1)(C) is a proper basis for exclusion of expert testimony. United States v. Holmes, 670 F.3d 586, 597 (4th Cir. 2012) (excluding expert on the subject of confessions in part because the defendant failed to provide bases and reasons for the expert's opinions); see also United States v. Barile, 286 F.3d 749, 758 (4th Cir. 2002) (no abuse of

discretion in excluding expert testimony where defendant failed to comply with Rule 16's notice requirements).

B.      Analysis

    1.      Dr. James Hilkey

As stated above, defendant has provided notice of proposed expert testimony from Hilkey as follows: "Dr. Hilkey is expected to testify regarding the psychological profile of the defendant and how his psychological profile and functioning drove certain behaviors of this defendant, as provided in the Report of Psychological Forensic Evaluation. This testimony is expected to provide response to anticipated characterizations by the Government witnesses . . . ." (DE 216 at 1). Defense counsel emailed a copy of Hilkey's report and resume to the government on September 13, 2018.

Hilkey opines in relevant part as follows:

> It is my opinion that Dr. Kumar's escalating behaviors are stress-related in a person who perceived himself to be under siege. . . . The acute stress of these investigations [i.e., by law enforcement and the North Carolina Medical Board], the loss of insurance remuneration, and the perceived attacks on his professional/personal reputation resulted in aberrant behaviors that belied his typical emotional stability . . . Functionally, individuals who suffer from Obsessive-Compulsive Personality Disorders attempt to control what may be an otherwise chaotic situation by over-accumulation or over-regulation of self and, at time, others . . .

> One cannot minimize the influences encountered by Dr. Kumar's parents initially of having to leave Pakistan under sieze [sic] and living through a violent military uprising in Punjab, India in 1984. These events certainly had an impact on Dr. Kumar's life and contributed to his views of governments. As he explained, his family had to stockpile necessities while living in India and, given the unrest experienced both in Pakistan and in India, the Kumar family developed an inherent distrust of the government's ability to ensure personal safety. This legacy, I suspect, has always been a part of Dr. Kumar's 'DNA' and may well explain his strong advocacy for Second Amendment issues, hoarding of supplies, and his conservative political views."

(DE 233 at 14-15).

The government characterizes the above testimony as expert evidence of a mental condition, disease, or defect barred by the IDRA. Defendant disputes this characterization, arguing the government's motion

> is ill-founded, the arguments not relevant to the testimony of defendant's expert, who is expected to testify to facts supporting a non-criminal intent explanation for behaviors unrelated to (i.e., "surrounding") drug trafficking which refute the Government's anticipated tactic to convince the jury that there is no other plausible explanation for defendant's extra-professional activities but that of a "guilty mind." While we are mindful that the Government intends to suggest to the jury hoarding and burying money at his home, collecting collector's grade guns, videotaping interactions with law enforcement (and others), and engaging in even combative, confrontational conduct in and around New Bern, North Carolina outside of his medical office (see page 8, Argument) clearly evidences he was a drug trafficker and danger to the community (as they have done in detention hearings), defendant is entitled to put before the jury an alternate explanation for his eccentric conduct with a competent expert who has studied his history and personality.

(DE 235 at 6 (emphasis removed)[6]; see also DE 235 at 16 ("defense has no intention to utilize Dr. Hilkey to in any way excuse criminal drug trafficking conduct . . . or minimize the intent element of same . . . . As explained by Dr. Hilkey, part of his focus is to provide an 'alternate explanation for his behavior surrounding the alleged offenses.' . . . . This is not character evidence prohibited nor is it evidence to excuse guilt.")).

Thus, the question before the court is whether defendant is allowed to present expert evidence of defendant's mental condition, including expert evidence concerning defendant's stress, obsessive-compulsive disorder, or anti-government ideology, either 1) in support of an insanity

---

[6] The government alleges that in defendant's residence, agents "seized four prescription pill bottles–without labels–containing approximately 165 suspected Schedule II pills"; "36 firearms and tens of thousands of rounds of ammunition for those weapons," ranging from "handguns to large capacity semi-automatic rifles"; as well as large amounts of cash which "were stuffed into large PVC pipes, and the pipes were sealed and taped" and placed "inside duffel bags," totaling more than $400,000.00. (DE 161 at 6-7). The government additionally alleges what the government describes as defendant's "aggressive countersurveillance efforts, including his employment of patients, a private investigator, and others to aid in his countersurveillance." (Id. at 22). As previously stated, the court denied defendant's motions in limine to exclude these categories of evidence. (See DE 228 at 8-19).

defense or as evidence of diminished capacity, as argued by the government, or 2) on auxiliary issues to the crimes charged or the intent to commit those crimes, as argued by defendant.

The court holds under either interpretation, defendant's proposed expert testimony should be excluded as 1) barred by the IDRA or 2) irrelevant, unfairly prejudicial, and unhelpful to the trier of fact under the Federal Rules of Evidence 401, 403, and 702.

a. Expert Evidence in Support of Insanity Defense or Diminished Capacity

The IDRA codified the federal standard for an insanity defense and provides in part as follows:

> (a) Affirmative defense.-It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense. . . .

18 U.S.C. § 17. The IDRA expressly prohibits the use of any "[m]ental disease or defect" as a defense unless it demonstrates that the defendant "was unable to appreciate the nature and quality or the wrongfulness of his acts." Id. As stated by the Fourth Circuit, "[t]he language of the statute leaves no room for a defense that raises 'any form of legal excuse based upon one's lack of volitional control' including 'a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions.'" United States v. Worrell, 313 F.3d 867, 872 (4th Cir. 2002) (citing United States v. Cameron, 907 F.2d 1051, 1061 (11th Cir.1990)).

The Fourth Circuit has directly addressed the IDRA in Worrell, where defendant sent threatening letters to his ex-girlfriend in violation of federal law while incarcerated for an unrelated offense. 313 F.3d at 869. Defendant sought to introduce the testimony of a forensic psychiatrist to explain the alleged effects of his bipolar and intermittent explosive disorders at the time he wrote and mailed the offending letters. Id. at 869-70. The trial court granted the government's motion to

exclude the testimony, but allowed defendant to testify on the subject.  Id. at 871.  On direct examination, defendant testified that, prior to writing the first letter to his ex-girlfriend, he was not taking his medication for the treatment of his psychological disorders.  Id.

The Fourth Circuit upheld the trial court's decision to exclude defendant's mental health expert.  In so doing, the Fourth Circuit affirmed its agreement with other courts holding "the IDRA does not prohibit psychiatric evidence of a mental condition short of insanity when such evidence is offered purely to rebut the government's evidence of specific intent," but it emphasized that "such cases will be rare."  Id. at 874.  The Fourth Circuit noted that it had "difficulty envisioning many scenarios in which a defendant could introduce psychiatric evidence, short of insanity, that was not simply diminished capacity evidence or some other form of justification in disguise."  Id. at 873 (citation omitted) (emphasis added).

 The Fourth Circuit suggested that mental health expert testimony might be appropriate to negate an element of the government's case only if it established that the defendant "did not [commit the crime], not that he could not help it."  Id. at 874.   The court turned to United States v. Staggs, 553 F.2d 1073 (7th Cir. 1977), as a rare example where non-insanity psychiatric evidence was appropriate.  Id. at 873.  In Staggs, the Seventh Circuit found admissible psychiatric testimony that the defendant could not have threatened to shoot an FBI agent, as charged, because he suffered from a mental condition that made it highly unlikely that he would make such a threat.  Id. at 873-74.

The Fourth Circuit concluded that, unlike the testimony in Staggs, the testimony at issue in Worrell was offered for the improper and inadmissible purpose of explaining away or otherwise justifying the defendant's conduct:

> Dr. Corvin's opinion was essentially that because Worrell was not taking his medication at the time of the offenses, he was not able to exercise control over his actions or reflect on the possible consequences of his actions . . . This evidence is

clearly calculated to show that Worrell, because of unmedicated bipolar and intermittent explosive disorders, was not able to control his behavior or reflect on potential consequences before acting. This is no different than evidence that Worrell lacked the ability to conform his behavior to the requirements of law. <u>IDRA bars a defendant who is not pursuing an insanity defense from offering evidence of his lack of volitional control as an alternative defense.</u>

<u>Id.</u> at 875 (emphasis added).

More recently the Fourth Circuit upheld the district court's decision to exclude expert testimony, discussing <u>Worrell</u> as follows:

> In <u>Worrell</u>, we suggested testimony might be admissible if it was being offered "to show he did not do it, not that he could not help it." Dr. Mulbry's testimony falls short of this standard because it does not suggest that Peninger did not defraud his victims or mean to defraud them. As the district court noted, the testimony is the very type of "volitional" evidence <u>Worrell</u> and the IDRA prohibit – a suggestion for <u>why</u> he committed the fraud or why he could not help himself commit fraud. As we succinctly stated in <u>Worrell</u>, "IDRA bars a defendant who is not pursuing an insanity defense from offering evidence of his lack of volitional control as an alternative defense."

<u>United States v. Peninger</u>, 456 F. App'x 214, 216 (4th Cir. 2011) (emphasis in original).

Here, defendant's expert offers evidence as to defendant "aberrant behaviors," that "belied his typical emotional stability," as well as information regarding defendant's obsessive-compulsive personality disorders and difficult childhood to explain defendant's "strong advocacy for Second Amendment issues, hoarding of supplies, and his conservative political views." (DE 233 at 14-15; <u>see also</u> DE 216 (defendant's notice stating "Dr. Hilkey is expected to testify regarding the psychological profile of the defendant and how his psychological profile and functioning drove certain behaviors by this defendant. . .")).[7]  To the extent this evidence is offered as evidence of "lack of volitional control as an alternative defense" or "some other form of justification in

---

[7] The court notes that defendant previously sought to exclude evidence regarding defendant's political views, which the court granted, counseling defendant that such evidence is excluded unless defendant introduces such evidence himself.

disguise," this evidence is barred by the IDRA. See Worrell, 313 F.3d at 873, 875.

        b.      Expert Evidence in Support of Auxiliary Issues to the Crimes Charged

As stated above, defendant argues the IDRA does not apply in this instance, stating as follows:

> As explained by Dr. Hilkey, part of his focus is to provide an "alternate explanation for his behavior surrounding the alleged offenses." . . . . This is not character evidence prohibited nor is it evidence to excuse guilt. It is anticipated that the surrounding behaviors are the inferences the Government intends to use to suggest guilty mind to the jury, not actual criminal conduct, to wit: drug trafficking. This is context not within the realm of expertise or common knowledge by the jury, and would be helpful to the trier of fact when the prosecution will inevitably ask them the question, "Why would he otherwise [do that]?", drawing speculation dangerous to the truth seeking process. Moreover, it is anticipated that should the defendant testify, his behaviors will require context by Dr. Hilkey.

(DE 235 at 16 (emphasis removed)).

Psychiatric evidence introduced for purposes beyond proving the defense of insanity is rarely admissible. See Worrell, 313 F.3d at 873 ("We confess we have difficulty envisioning many scenarios in which a defendant could introduce psychiatric evidence, short of insanity, that was not simply diminished capacity evidence or some other form of justification in disguise."); United States v. Dietz, 443 F. App'x 781, 788 (4th Cir. 2011) (citations omitted) ("Following the Insanity Defense Reform Act (IDRA), a defendant may offer psychiatric testimony to show that he acted under a mental disease or defect short of legal insanity only if the evidence negates an essential element of the government's prima facie case.").

As explained by the Tenth Circuit,

> [The] IDRA, in addition to narrowing the definition of the affirmative defense of insanity, provided that "[m]ental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a) (emphasis added). The federal courts in cases like Brown were faced with the issue whether evidence of mental illness which was not sufficient to establish insanity could be relevant under other circumstances. In particular, in Brown and cases cited therein defendants attempted to use evidence of

mental illness not as an affirmative defense subject to the standard of section 17(a) but only to challenge the government's proof of the mens rea of the crimes charged. As noted with approval in <u>Brown</u>, several circuits had held that, at least in some circumstances, a defendant could use evidence of mental illness to negate the mens rea element, but only of specific intent crimes.

<u>United States v. Allen</u>, 449 F.3d 1121, 1126 (10th Cir. 2006) (citing <u>United States v. Brown</u>, 326 F.3d 1143 (10th Cir.2003)).

However, even if defendant's expert evidence is not barred by the IDRA, the court holds such expert evidence is still inadmissible under Rules 401, 403, and 702. Defendant is charged with conspiracy to prescribe controlled substances outside the usual course of professional practice and not for a legitimate medical purpose, related drug distribution counts, possession of a firearm in furtherance of a drug trafficking crime, money laundering, and tax evasion. Hilkey does not address the charges against defendant and instead opines that defendant's "aberrant behaviors" may be attributable to stress, obsessive-compulsive disorder, or anti-government ideology, behaviors defendant argues are unrelated to the crimes charged. Without an explanation of how these behaviors relate to defendant's alleged distribution of controlled substances, unlawful possession firearms, laundering of United States currency, and tax evasion, Hilkey's proposed testimony is of limited relevance where such evidence is not offered as a defense to the charges in question. <u>See</u> <u>Gooden v. United States</u>, No. 5:06-CR-313-FL-1, 2013 WL 4460501, at *10 (E.D.N.C. Aug. 20, 2013) ("The trial court agreed with the government that this defense was precluded by the Fourth Circuit's decision in <u>Worrell</u>. Absent a Santeria-based defense, the nature and belief system of Santeria was completely irrelevant to Gooden's trial and properly excluded.").[8]

---

[8] Defendant argues the government has made Hilkey's testimony necessary and relevant: "in light of the Government's intention to speculatively link otherwise benign conduct of this defendant to drug trafficking, the testimony will be highly relevant and instructive to a jury who do not possess the common knowledge to perceive it for themselves." (DE 235 at 17; <u>see also</u> <u>id.</u> at 18-19 (referencing "otherwise benign uncharged conduct it is anticipated the Government intends to proffer that is the subject of the expert's testimony and defendant's behaviors in response

For similar reasons, any probative value associated with such generalized testimony would be minimal and heavily outweighed by the risk of the danger of unfair prejudice, confusion, or misleading the jury. Admission of this proposed testimony is not allowed under Rule 403 where, as here, defendant seeks to stamp a "clinical label" on defendant's stress, obsessive compulsive behavior, and anti-government ideologies that could be developed through other sources, including defendant himself, and have not been linked to the charged offenses, as discussed above.[9]

As stated by the Fourth Circuit

> evidence regarding her abilities in English was a topic readily comprehendible by jurors and could be developed through other sources. As the "imprimatur of a clinical label" regarding Tsoa's abilities in English was neither necessary nor helpful to the jury, and Dr. Boggio's opinions regarding Tsoa's intellectual abilities were not linked to her mental state at the time of the charged offense conduct, the district court did not abuse its discretion in concluding that any probative value from Dr. Boggio's opinions was substantially outweighed by a danger that admission of the opinions would confuse the issues and mislead the jury and that the opinions were therefore excludable under Rule 403.

United States v. Ging-Hwang Tsoa, 592 F. App'x 153, 155–56 (4th Cir. 2014) (citing United States v. DiDomenico, 985 F.2d 1159, 1164 (2d Cir.1993)).

Finally, the proposed testimony fails to satisfy Rule 702 and the Daubert test because it is

---

(possibly while testifying)")). The court, however, rejects the implication of defendant's argument, that because the government has been allowed and will present evidence of defendant's behavior the court has found relevant to the crimes charged, an expert medical witness is necessary to explain that same behavior to the jury. (See DE 228 at 8-19). Defendant will be able to explore this allegedly speculative link on cross of the government's witnesses as well as possibly in defendant's case in chief.

[9] The government argues that "[i]f defendant wants to introduce evidence that he believes bears on the issue of his guilt, to include his upbringing in India and his reaction to various investigations, he may take the stand," arguing that "defendant is the most qualified to tell his story, to narrate the facts as he views them, and to explain his reactions and responses to those facts." (DE 233 at 19-20 (citing Worrell, 313 F.3d at 871 (affirming exclusion of mental health expert testimony where the defendant testified about the same topics) and DiDomenico, 985 F.2d at 1163 (affirming exclusion of expert testimony concerning the defendant's "dependent personality disorder" where the defendant's own testimony on the subject had "covered virtually the entire ground of [the expert's proffered] testimony.")). Defendant appears to respond that defendant is unable to present "the true nature of facts . . . candidly through his own testimony because he appears to lack insight that his expert possesses by virtue of his training and expertise." (DE 235 at 123). Such an argument again rings of an effort to impermissibly present "diminished capacity evidence or some other form of justification in disguise." Worrell, 313 F.3d at 873.

not helpful to the jury. Although defendant argues otherwise, the subjects for which the defendant proposes to offer Hilkey, defendant's ideological beliefs about the reliability of government based on his life experiences and his response to the "stressors" of investigations into his medical practice, are within the purview and experience of the jury. See Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962) (quoting U.S. Smelting Co. v. Parry, 166 F. 407, 411, 415 (8th Cir. 2013)) (holding expert testimony excludable where people "of common understanding" are just as capable of understanding and drawing conclusions from a set of facts as the proposed expert).

Accordingly, the court grants the government's motion to exclude Hilkey's testimony.[10]

2.      Dr. Wilkie Andrew Wilson, Jr.

Defendant seeks to qualify Wilson as an expert in the field of neurophysiology or neuropharmacology. (See DE 216 at 1-2; DE 234 at 2).[11] On September 15, 2018, defense counsel emailed the government a letter signed by Wilson which contained five bullets captioned as "scope of testimony" stated in full as follows:

- •      How the human brain is wired to be vulnerable to addiction.
- •      The biological basis of addiction including the normal human brain systems that get hijacked by addictive processes.
- •      The behavioral effects of addiction, including craving and compulsive seeking of drugs or other rewarding processes (gambling, food, sex).
- •      The pharmacology of opiates, including rewarding effects, tolerance, and withdrawal.
- •      Why normally responsible individuals develop addictions and how that affects their behavior.

(DE 234 at 2). On September 25, 2018, defense counsel emailed the government curriculum vitae

---

[10] Given the court's holding above, it is unnecessary to address the government's alternative argument for exclusion of Hilkey's testimony under Federal Rule of Evidence 12.2(d). (See DE 233 at 1).

[11] Pharmacology is "the science that deals with the origin, nature, chemistry, effects, and uses of drugs." Dorland's Illustrated Medical Dictionary (32nd ed. 2012) at 1425. Neuropharmacology is "the branch of pharmacology that deals especially with the action of drugs upon various parts and elements of the nervous system." Id. at 1270. Neurophysiology is the physiology of the nervous system. Id.

for Wilson, and, on the next day, a second letter from Wilson expanding upon the "scope of testimony" bullets identified above, adding a new bullet, in which Wilson described his proposed testimony about the cause of death of Edwin Desmond ("Desmond"), one of the defendant's patients. (Id. at 2-3).[12]

The government seeks to exclude Wilson's testimony, arguing the following: 1) defendant has not complied with Rule 16, 2) Wilson is not qualified to opine about Desmond's cause of death, 3) the proposed testimony constitutes an inadmissible attack on witness credibility, 4) the proposed testimony is unhelpful to the trier of fact, and 5) the proposed testimony fits within a juror's common understanding.

It appears that defendant seeks to have Wilson testify to two separate and unrelated categories of evidence: 1) the science of addiction and how addiction effects human behavior, as discussed in the bullet points above, and 2) the cause of Desmond's death. (See DE 236 at 7 ("Dr. Wilson will be examined about all relevant aspects of biochemical processes, how those processes manifest, the pharmacology of opioids and effects driving behaviors, as well as actual relevance of the medical examiner's findings on deaths anticipated in the Government's case-in-chief as it relates to chemicals present, for example and not by way of limitation."); see also id. at 5-6 ("He will assist the jury to understand the toxicology report, the pharmacology and the causation issue."); id. at 8 ("In his opinion, Dr. Wilson provides detailed and complex assessment of the biochemical processes at issue in this case . . . .")). The court will address both of these categories of evidence in turn below.

---

[12] According to the autopsy report, the cause of Desmond's death was "oxycodone toxicity." Defendant filed motions in limine seeking to exclude at trial any reference to individuals who overdosed from drugs. (DE 121, DE 163). On January 28, 2019, the court issued order in which it deferred ruling on the admissibility of this category of evidence. (DE 228 at 14).

a. Addiction and Human Behavior

The "scope of testimony" provided by defendant to the government fails to describe what opinions, if any, Wilson plans to offer in this case, and the bases and reasons for those opinion, offering only that Wilson plans to testify in general terms regarding the science of how addiction can effect human behavior. Defendant did not comply with Rule 16 regarding this category of evidence.

Even if defendant had complied with Rule 16, this proposed testimony is of limited relevance to the charges brought against defendant. Although defendant argues "expert testimony touching on addictive behaviors reach elements of proof," (DE 236 at 5), defendant does not offer further explanation of this statement, and there appears to be a limited connection between the proposed testimony and what the jury must determine as relevant here, whether defendant operated within the bounds of professional practice and not for a legitimate purpose. See United States v. Singh, 54 F.3d 1182, 1187 (4th Cir.1995) (quoting United States v. Tran Trong Cuong, 18 F.3d 1132, 1141 (4th Cir.1994) (holding that in order to convict a licensed medical provider of unlawful distribution of controlled substances, the government must prove that the provider's "'actions were not for legitimate medical purposes in the usual course of his professional medical practice or [were] beyond the bounds of medical practice.'")).

For the same reason, the probative value of this testimony is low and the likelihood high that this testimony will confuse the issues, mislead the jury, and distract from the ultimate issues. The testimony sought to be introduced stands in contrast to the expert testimony courts have allowed in similar unlawful distribution cases. See United States v. Boccone, 556 F. App'x 215, 226 (4th Cir. 2014) (citing United States v. McIver, 470 F.3d 550 (4th Cir.2006); United States v. Alerre, 430 F.3d 681 (4th Cir.2005); Tran Trong Cuong, 18 F.3d at 1141) (holding "testimony and report were

both scientifically valid and helpful to the jury" in unlawful distribution of controlled substances case were "Dr. Hamill–Ruth was qualified, without objection, as an expert in pain management" and where "[s]imilar to the expert testimony in McIver, Alerre, and Tran Trong Cuong, Dr. Hamill–Ruth described her understanding of the standard of care for treating patients in a pain management context and then compared the treatment shown in the medical records in the case with that standard of care, finding the treatment shown to be outside legitimate medical practice.")).

Additionally, as stated above, expert testimony is excludable where people "of common understanding" are just as capable of understanding and drawing conclusions from a set of facts as the proposed expert. See Salem, 370 U.S. at 35. It is commonly known that people will go to significant lengths to satisfy their addictions. Learning about the science that causes these behaviors, or the degree to which they affect different people, will not assist the trier of fact in this case, beyond what they will already know about addiction. Wilson's proposed testimony on these topics is entirely general in nature, not specific to particular witnesses or the facts of this case. See United States v. Brown, No. 90-50227, 1992 WL 59011, at *2 (9th Cir. 1992) (generalized expert testimony about drug use and addictive behavior properly excluded under Fed. R. Evid. 702 where it "would not have been 'appreciable help' in clarifying the conflicting testimony on [government informant's] drug use or in supporting the elementary proposition that addicts might lie to support their habits.") (citations omitted).[13]

---

[13] This category may also constitute an improper attempt to impeach the credibility of witnesses who were formerly patients of the defendant. The Fourth Circuit has ruled that "absent 'unusual circumstances,' the district court must exclude expert testimony on issues of witness credibility." United States v. Fuertes, 805 F.3d 485, 496 (4th Cir. 2015) (quoting United States v. Lespier, 725 F.3d 437, 449 (4th Cir. 2013)). Determining the credibility of a witness is "usually within the jury's exclusive purview." Lespier, 725 F.3d at 449 (quoting Dorsey, 45 F.3d at 815)). The only exception is with expert testimony on the validity of eyewitness examination, which is only permitted in "narrow circumstances," and which is not at issue here. Id. To the extent that Wilson's proposed testimony implicates the credibility of the government's witnesses and defendant's former patients, such a determination is within the province of the jury.

For these reasons, the government's motion to exclude Wilson's testimony as to this category of evidence is granted.

b.      Cause of Death of Desmond

With regard to this category of evidence, it does not appear that defendant has sought to qualify Wilson as an expert on the cause of Desmond's death.  As the government observes:

> The Defendant provided an extensive list of qualifications for Wilson.  Identified in his curriculum vitae are numerous articles, books, and research projects that Wilson has worked on throughout his career.  However, nowhere in those qualifications is there any reference to conducting medical examinations on the deceased or reviewing toxicology reports to determine cause of death.  To the contrary, the bulk of information in Wilson's curriculum vitae has to deal with epilepsy and various impacts of certain types of chemical compounds on the brain, which fits Wilson's area of expertise (neuropharmacology).  Accordingly, Wilson lacks the necessary qualifications to offer an opinion on the cause of Edwin Desmond's death.

(DE 234 at 19).

In response, defendant urges that Wilson "is imminently qualified to provide that testimony from his examination of the records provided in discovery, his analysis of the medical examiner's reports provided, and his training and experience."  (DE 236 at 5).  Defendant fails to provide the court with <u>any</u> information or argument as to specifics regarding Wilson's training and experience or address any of the government's arguments made above.

Defendant has not cited, nor is the court aware, of any case where a court has qualified  an expert in neuropharmacology and neurophysiology to opine on the causation of death, as opposed to how drugs can effect the human body and behavior (the area in which defendant originally sought Wilson to provide testimony).  <u>See, e.g.</u>, <u>Newton v. Roche Labs., Inc.</u>, 243 F. Supp. 2d 672, 681 (W.D. Tex. 2002) (qualifying expert to testify as to "specific causation, i.e., that Accutane was the

cause in fact of Candis Newton's schizophrenia" where expert "has testified to his expertise as a clinical psychiatrist in the area of neuropharmacology for the purpose of evaluating psychotropic drugs"); Eli Lilly & Co. v. Zenith Goldline Pharm., Inc., 364 F. Supp. 2d 820, 847 (S.D. Ind. 2005), aff'd, 471 F.3d 1369 (Fed. Cir. 2006) ("The court qualified Zenith's expert . . . as an expert in the field of molecular pharmacology and neuropharmacology . . . . Dr. Reith has extensive experience with respect to dopamine and serotonin receptors, TX 3170, the specific areas of the brain at which the effects of antipsychotics are observed"); Cone v. Colson, 925 F. Supp. 2d 927, 978 (W.D. Tenn. 2013) ("The defense's third witness, Jonathan J. Lipman, Ph.D., a neuropharmacologist, was qualified as an expert on the effects of drugs on the human body"); see also Blotcher v. Stewart, 45 F. Supp. 3d 1274, 1279 (D. Colo. 2014) ("To begin, I find—and this is not disputed—that Dr. Hipskind is qualified to interpret brain SPECT scan images. As an M.D. he has specialties in neurology and family medicine. He also has a Ph.D. in Neurophysiology (the study of the human nervous system).").

Although defendant argues at length that Wilson's testimony is necessary to defendant's case to combat the government's attempt "to present deaths of certain [of defendant's] patient[s] as a direct or 'reasonably foreseeable' consequence to the prescribing habits of defendant in order to make their case for guilt," (id.), defendant has failed to offer any argument or evidence upon which the court can so qualify Wilson to opine. Maryland Cas. Co. v. Therm-O-Disc, Inc., 137 F.3d 780 (4th Cir. 1998) (holding party proffering expert scientific testimony must come forward with evidence from which a court can determine that proffered testimony is properly admissible).

In sum, the government's motion to exclude the expert testimony of Wilson is granted in full.

## CONCLUSION

Based on the foregoing, the court GRANTS the government's motions in limine seeking to

exclude defendant's proposed experts' testimony, excluding the testimony of Hilkey and Wilson.

(DE 233, DE 234).

SO ORDERED, this the 27th day of March, 2019.

LOUISE W. FLANAGAN
United States District Judge