IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:17-CR-5-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| SANJAY KUMAR, | ) | |
| | ) | |
| Defendant. | ) | |

This matter come before the court on motions to modify defendant's subpoena and quash another of defendant's subpoenas, filed by the North Carolina Department of Health and Human Services ("DHHS"). (DE 237, DE 239). For the reasons that follow, DHHS's motions are granted.

## BACKGROUND

The government alleges that for more than ten years, defendant operated a purported pain management clinic in New Bern, North Carolina, called "New Bern Medicine and Sports Rehabilitation." From approximately 2011 to 2016, defendant allegedly prescribed more than 1,000,000 pills containing Schedule II and Schedule IV controlled substances, receiving more than $1,000,000.00 in cash for those pills. See, e.g., United States of America v. Sanjay Kumar, Defendant, No. 4:17-CR-5-FL-1, 2019 WL 1387687, at *1 (E.D.N.C. Mar. 27, 2019). Jury trial is set to commence July 8, 2019.

The North Carolina Controlled Substances Reporting System ("CSRS") is managed by the North Carolina Drug Control Unit, which is part of the Mental Health, Developmental Disabilities and Substance Abuse Services Division of DHHS. The CSRS is a central repository which tracks prescriptions dispensed in the state of North Carolina. On March 22, 2019, DHHS filed the instant

motions to modify one subpoena issued by defendant to DHHS and to quash another subpoena issued by defendant to DHHS, both seeking information regarding CSRS. Regarding the former subpoena, defendant seeks the following records from the CSRS:

1.      All prescriber and prescription information pertaining to any and all <u>Schedule 1</u>, Schedule 2, Schedule 3, and Schedule 4 drugs for the years 2012 through 2018 for the following Doctor's orders, <u>including all PA orders on their behalf</u> and under all DEA numbers assigned to the named physician[s]:

   a.      Dr. Michael K. Nunn
   b.      Dr. Alan Russakov
   c.      Dr. Raymond Bradley, Jr.
   d.      Dr. Sanjay Kumar
   e.      Dr. Benjamin Wall
   f.      Dr. Paul P. Carnes
   g.      Dr. Lawrence H. Greenblatt
   h.      Dr. Carri L. Griffiths
   i.      Dr. Scott Kirby
   j.      Dr. John Liguori

2.      All prescriber and prescription information pertaining to any and all <u>Schedule 1</u>, Schedule 2, Schedule 3, and Schedule 4 drugs dispensed for the years 2012 through 2018 from <u>REALO Pharmacy</u>.

3.      All prescriber and prescription information pertaining to any and all <u>Schedule 1</u>, Schedule 2, Schedule 3, and Schedule 4 drugs dispensed for the years 2012 through 2018 from Bynum's Pharmacy, New Bern, North Carolina.

(DE 245 at 3 (emphasis added)). Regarding the latter subpoena, defendant seeks testimony from Mandy Cohen ("Cohen"), secretary of DHHS, directing Cohen to appear and testify on July 8, 2019, at 9:00 a.m., and to bring with her the same records requested above. (<u>Id.</u> at 5-6).

These subpoenas represent defendant's second attempt to procure records from the CSRS. On September 6, 2018, the court granted DHHS's previous motion to quash defendant's subpoena, holding in relevant part as follows:

Although there can be little doubt the information sought by defendant is relevant, and defendant stresses that the information sought is "crucial," defendant's broad request

does not seek specific, admissible information contemplated by Rule 17(c), <u>Nixon</u>, and <u>Richardson</u>. As set forth above, defendant seeks all opiate prescribing data for all physicians in ten North Carolina counties over a six and a half year time span. Such a request is not narrowly tailored to the issues in this case. Defendant issued this request notwithstanding the direction by the court to defense counsel in hearing that any request for access to the applicable records must be specific and limited.

Additionally, the limitations of CSRS as a system are such that the information sought by defendant cannot be provided as currently requested in defendant's subpoena. As stated by DHHS, CSRS automatically purges records when they are six years old, CSRS cannot sort records by pill type, many reports leave the county field blank when reporting their prescription information, and CSRS only has 1.5 staff positions, which would mean complying "with a subpoena of this nature would take weeks, if the staff were doing nothing else other than working on this request, which isn't possible." (DE 148-1 at 10-11).

(DE 174 at 11 (footnotes and citations omitted)).

## DISCUSSION

A.    Standard of Review

Rule 17(a) permits a defendant to issue a subpoena ad testificandum to compel testimony at

trial. Rule 17(c) permits a defendant to issue a subpoena duces tecum to compel the production at

trial of "books, papers, documents, data, or other objects." Fed. R. Crim. P. 17(c)(1). A district court

"may quash or modify" the subpoena duces tecum "if compliance would be unreasonable or

oppressive," Fed. R. Crim. P. 17(c)(2). A subpoena is unreasonable or oppressive if it is

"excessively broad" or "overly vague." <u>In re Grand Jury, John Doe No. G.J.2005-2</u>, 478 F.3d 581,

585 (4th Cir. 2007).

Rule 17(c) "is not intended to provide a means of pretrial discovery; rather, its primary

purpose is simply 'to expedite the trial by providing a time and place before trial for the inspection

of subpoenaed materials.'" <u>United States v. Richardson</u>, 607 F.3d 357, 368 (4th Cir. 2010) (quoting

<u>United States v. Nixon</u>, 418 U.S. 683, 689–99 (1974)). In <u>United States v. Nixon</u>, the Supreme

Court held that the requesting party bears the burden of showing

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. at 699–700 (footnote omitted).

The Nixon Court "distilled this showing into three requirements: "(1) relevancy; (2) admissibility; [and] (3) specificity." United States v. Rand, 835 F.3d 451, 462 (4th Cir. 2016) (citing Nixon, 418 U.S. at 700). The United States Court of Appeals for the Fourth Circuit found the Nixon standard applicable to third-party subpoenas under Rule 17(c), holding "[t]he right to defend oneself does not extend to using the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely 'investigatory.'" (Id. at 463 (citation omitted)).

B.      DHHS's Motions to Modify and Quash Defendant's Subpoenas

As stated above, the CSRS is a central repository which tracks prescriptions dispensed in the state of North Carolina, in an effort to "improve the State's ability to identify controlled substance abusers or misusers and refer them for treatment, and to identify and stop diversion of prescription drugs in an efficient and cost-effective manner that will not impede the appropriate medical utilization of licit controlled substances." N.C. Gen. Stat. § 90-113.71(b).

According to DHHS,

The NC Controlled Substances Reporting System (CSRS) collects controlled substance prescriptions data within 72 hours of being dispensed and makes this information available to prescribers and dispensers. The system is used as a clinical tool to improve patient care and safety while avoiding potential drug interactions and identifying individuals that are in need of referral to substances abuse treatment. In

addition, prescribers can audit their personal controlled substances prescribing history.

N.C. DHHS, NC Controlled Substances Reporting System (CSRS), https://www.ncdhhs.gov/divisions/mhddsas/ncdcu/csrs#csrs5 [https://perma.cc/4C2K-MA68].

1. DHHS's Motion to Modify Defendant's Subpoena

DHHS is "producing the records requested" except to the extent DHHS seeks to modify the subpoena. (DE 240 at 3). First, DHHS seeks to modify defendant's first request, seeking prescriber information of both physicians and "all PA orders on their behalf." (See DE 245 at 3). DHHS states it is "unable to identify those physician assistants and provide their prescribing history." (DE 238 at 3). Second, DHHS seeks to modify all of defendant's requests, seeking information concerning Schedule I drugs. (See DE 245 at 3). DHHS states that in North Carolina, "Schedule I drugs include drugs that have a high potential for abuse and no accepted medical use, such as heroin and ecstasy" and that "[b]ecause these drugs have no accepted medical use, they are not tracked in CSRS." (DE 238 at 3). Finally, DHHS seeks to modify defendants second request, seeking information "from REALO Pharmacy." (See DE 245 at 3). DHHS represents that defendant's request for REALO pharmacy records is unreasonable and oppressive where "[u]pon information and belief, there are as many as thirty REALO Pharmacies, or some business form thereof, in North Carolina." (DE 238 at 3-4).

Defendant appears to argue in response that the court should deny DHHS's motion to modify because DHHS cannot determine what is relevant to defendant's case. (See DE 243-1 at 1). However, DHHS does not object to defendant's subpoena on the basis of relevance. Defendant additionally argues that even though DHHS asserts impossibility regarding defendant's requests, DHHS "has however fully cooperated and disclosed all such information for the use and in the

discretion of the Government." (DE 243-1 at 1-2). However, defendant also states "[t]he information requested by the Attached Subpoena of DHHS . . . is not available to the Defendant through Government disclosures," that defendant has received all requested discovery from the government, and that "this information is not within the Government's control." (Id. at 4-5). Thus it appears that the information requested by defendant which DHHS states cannot be provided has not been provided to the government.

Finally, although defendant argues at length that generally the information sought is crucial, relevant, and necessary, defendant offers no further argument or case law in support of his position excepting the arguments made above. Indeed, defendant makes no reference to DHHS's argument that DHHS is unable to identify the physician assistants and their prescribing histories, that DHHS does not track Schedule I substances, and that there are over 30 REALO pharmacies subject to defendant's request.

Where defendant fails to inform the court how or why the court should direct DHHS to produce records they cannot identify or do not maintain, DHHS's request that the subpoena be modified with reference to information concerning physician assistants and Schedule I drugs is granted.

Additionally, defendant has been instructed numerous times by this court that CSRS information sought by defendant should be specific and limited. Defendant's requests for all REALO pharmacy records is not specific and limited. Regarding the request for REALO pharmacy records, DHHS offers that defendant "should either ask for a specific location like in Request 3" or the "court should modify the subpoena to remove that request." (DE 238 at 4). The court directs defendant, if he wishes to proceed, to identify to DHHS a specific REALO pharmacy location as

defendant did in defendant's third request.

2.    DHHS's Motion to Quash Defendant's Subpoena

Regarding defendant's subpoena seeking testimony from Cohen, DHHS seeks to quash this subpoena, arguing that Cohen is responsible for the operations of DHHS which serves roughly two million individuals in North Carolina, is not involved in the day-to-day operations of the CSRS, and is not the proper person to authenticate CSRS records at trial.  Regarding authentication, DHHS states "Kumar's counsel was present when John Womble, Program Consultant for the CSRS, addressed this Court" and that "[i]f someone is needed to authenticate the records requested by Kumar, it is Mr. Womble, not Dr. Cohen" or "Mr. Womble could complete a certification pursuant to Rule 902 as he has done before in other cases, to authenticate the records."  (DE 240 at 4). Finally, DHHS argues that no information has been provided as to how Cohen's testimony would be at all relevant to issues in this case, "particularly where DHHS is not a party and Dr. Cohen has no relevant knowledge of this case."  (Id.).

Almost verbatim, defendant puts forth the same arguments in opposition to DHHS's motion to quash as defendant put forth in opposition to DHHS's motion to modify.  However, defendant additionally provides the following, although the following does not address DHHS's above arguments:  "Mandy Cohen is the state official responsible for policy, procedure, use and storage, among other issues related to the North Carolina Controlled Substance Reporting system," "the defendant has a need to inquire of the agency head relevant information related to the North Carolina Controlled Substance Reporting System," and "[d]efendant seeks the testimony and information as the only available source, the agency head."  (See DE 244-1 at 2, 6).

Rule 17(a) addresses subpoenas to testify, and whereas Rule 17(c)(2) provides for a motion

to quash a subpoena duces tecum, "[t]here is no similar provision with regard to subpoenas to testify." § 274 Issuance and Form, 2 Fed. Prac. & Proc. Crim. § 274 (4th ed. 2009). As such the court recognizes that, "[a]lthough courts have granted motions to quash [subpoenas to testify], the better practice in ordinary cases is to require the witness to appear and claim any privilege or immunity he may have." Id.

Here, however, where defendant has failed to offer any argument or information as to the relevance of the testimony sought from Cohen and where the court cannot discern any relevance, DHHS's motion to quash defendant's subpoena is granted. See, e.g., United States v. Manghis, No. CRIM.A. 08CR10090-NG, 2010 WL 349583, at *1 (D. Mass. Jan. 22, 2010) ("it seems self-evident that Manghis should not be allowed to compel the appearance of a witness whose testimony would be irrelevant."); United States v. Wecht, No. CRIM. 06-0026, 2007 WL 2702350, at *14 (W.D. Pa. Sept. 13, 2007) ("To the extent defendant intends to examine Welsh and Swim about" various issues, their testimony would be "irrelevant, immaterial and tangential, and will not be permitted.").

## CONCLUSION

Based on the foregoing, DHHS's motions to modify (DE 237) and to quash (DE 239) are GRANTED.

SO ORDERED, this the 3rd day of April, 2019.

LOUISE W. FLANAGAN
United States District Judge